IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>        Respondent,<br><br>v.<br><br>JALAN SAECHAO VELEZ,<br><br>        Appellant. | No. 78270-3-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: September 16, 2019 |

CHUN, J. — A jury convicted Jalan Saechao Velez of defrauding a public utility in the first degree. On appeal, Velez claims that the trial court erred by permitting proof of his age, an essential element of the conviction, through inadmissible hearsay. We agree and reverse.

I.
BACKGROUND

On March 4, 2016, police served a search warrant at Velez's residence, suspecting the residents used the home to grow marijuana and defraud a public utility. The two persons at the residence, including Velez, complied with the search. The police detained both persons during the search. Detective Jarrod Seth asked where he could find Velez's identification, and Velez directed him to his bedroom down the hall. Detective Seth found Velez's Washington State identification card (ID card) in a wallet and asked if the address on the ID card was current. Velez responded that it was not. The ID card indicated that Velez

was 19 years old. Police arrested and charged Velez with defrauding a public utility in the first degree.

At trial, the State offered an uncertified copy of Velez's ID card. Velez's trial counsel objected to its introduction on the bases of hearsay and the best evidence rule. The trial court overruled the objections. Detective Seth then examined the uncertified copy of the ID card and testified as to its accuracy to the jury. The ID card constituted the sole proof of Velez's age. The jury later convicted Velez of defrauding a public utility in the first degree.

## II.
## ANALYSIS

In charging Velez with defrauding a public utility in the first degree, the State alleged that he tampered with a utility service in furtherance of the unlawful manufacture of marijuana in violation of former RCW 69.50.4013(4) (2015), as proscribed by RCW 9A.61.030. Former RCW 69.50.4013(4) (2015) prohibited individuals under the age of 21 from possessing, manufacturing, selling, or distributing marijuana. Without proof of Velez's age, he could not be convicted of violating former RCW 69.50.4013(4) (2015).

On hearsay grounds, Velez argues that the trial court erred by admitting the uncertified copy of his ID card. In response, the State offers three theories: (1) Velez did not adequately preserve the hearsay objection, (2) the trial court could have properly admitted the uncertified copy of the ID card as an adoptive admission, and (3) the police officer who testified to the identifying information on

2

the ID card served a qualified witness for the purposes of the business records exception. We agree with Velez.

A. Adequacy of Objection

The State argues that Velez insufficiently objected to admission of the uncertified copy of his ID card, such that he did not preserve the issue for appeal. We disagree.

Evidentiary objections must be timely and state the specific grounds for exception. ER 103(a)(1). "An objection which does not specify the particular ground upon which it is based is insufficient to preserve the question for appellate review." State v. Guloy, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985).

Velez specifically objected to the uncertified copy of the ID card as hearsay. Velez's trial counsel stated as follows: "[The ID card] is hearsay, because it's an out-of-court statement given for the truth of the matter asserted." Because Velez specified the grounds for his objection, we conclude he preserved the issue for appeal.

The State further argues that Velez did not preserve the issue for appeal because he did not renew his hearsay objection when Detective Seth later testified at trial as to Velez's age. The State offers no authority for its contention that the objection needed to be renewed. Velez's trial counsel had no such obligation: "If the trial court has made a definite, final ruling, on the record, the parties should be entitled to rely on that ruling without again raising objections during trial." State v. Koloske, 100 Wn.2d 889, 896, 676 P.2d 456 (1984) (overruled on other grounds by State v. Brown, 111 Wn.2d 124, 761 P.2d 588

(1988)); Robert H. Aronson, The Law of Evidence in Washington § 103.05[2] (4th ed. 2012).

Because Velez preserved the issue for appeal, we next consider the merits.

B.  Hearsay

Velez argues that the information contained in the uncertified copy of the ID card constitutes inadmissible hearsay.  The State argues otherwise, claiming Velez adoptively admitted the factual assertions on the ID card through his possession of it.  We agree with Velez.

Hearsay is an out-of-court statement "offered in evidence to prove the truth of the matter asserted." ER 801(c).  A court may not admit hearsay evidence unless allowed by Washington Rules of Evidence, other court rules, or statute.  ER 802.  If a party offers a statement of which the opposing party has manifested an adoption or belief in its truth, the statement is not hearsay.  ER 801(d)(2)(ii).

We typically review evidentiary rulings for abuse of discretion.  State v. Pirtle, 127 Wn.2d 628, 648, 904 P.2d 245 (1995).  A trial court abuses its discretion when its "decision is manifestly unreasonable or [is] based on untenable grounds." State v. Brown, 132 Wn.2d 529, 572, 940 P.2d 546 (1997).

The State offered the uncertified copy of the ID card for the truth of the matter asserted.  The copy included a statement of Velez's date of birth, and the State offered it to prove Velez's age.  The uncertified copy of the ID card was hearsay.

4

The State appears to propose that we hold that simple possession of an identification card qualifies as an adoptive admission of the statements contained on the card. We decline to do so.

Even under the non-Washington authorities cited by the State, the uncertified copy of the ID card constitutes inadmissible hearsay. The State cites the "possession plus" test, established by U.S. v. Ospina, 739 F.2d 448, 451 (9th Cir. 1984),[1] to support their argument that Velez's possession of the ID card constitutes an adoptive admission of the ID card's contents. The test provides that a party who possesses a document, plus acts on or uses the document in some way, adoptively admits the contents of the document. Transbay Auto Serv., Inc. v. Chevron USA Inc., 807 F.3d 1113, 1119-1120 (9th Cir. 2015). Transbay Auto Service explains how the "possession plus" test was applied in Ospina:

> In Ospina, as evidence of the defendant's participation in a drug conspiracy, the government sought to introduce two business cards with notations written on the back with the location of the drug transfer and the address of his co-conspirator's hotel. [Ospina, 739 F.2d] at 451. [The court] held these business cards admissible [as adoptive admissions] not only because they were in the defendant's possession, but because "[the defendant] acted on the information written on the cards when he traveled to the address written there to pick up cocaine."

Transbay Auto Serv., Inc., 807 F.3d at 1119 (quoting Ospina, 739 F.2d at 451).

Offering a document in response to a request for information of the sort contained in the document may also satisfy "possession plus." Transbay Auto

---

[1] Ospina does not call its test "possession plus," but other cases do so. See, e.g., Transbay Auto Serv., Inc. v. Chevron, 807 F.3d 1113, 1119 (9th Cir. 2015); U.S. v. Pulido-Jacobo, 377 F.3d 1124, 1132 (10th Cir. 2004).

Serv., Inc., 807 F.3d at 1120 (citing White Indus., Inc. v. Cessna Aircraft Co., 611 F. Supp. 1049, 1062-1063 (W.D.Mo. 1985)).

Under the foregoing standard, if Velez offered his ID card as a means of identifying himself to his arresting officers, then a trial court might have properly concluded the State satisfied the "possession plus" test. But on the record before us, we cannot conclude that Velez did so. Detective Seth authored a narrative regarding the case, which mentioned Velez's actions with respect to his ID card. The assertions therein do not establish that Velez offered the ID card as a means of identifying himself, but only that he told the detective the location of his ID card when asked. At trial, Detective Seth testified as follows regarding this exchange with Velez:

> [State]: And where did the ID come from?
> [Detective Seth]: From a wallet in Mr. Velez's bedroom.
> [State]: Okay.
> [Detective Seth]: After I asked him where his ID was.

This testimony also does not establish that Velez offered his ID card as a means of identifying himself. The State does not point to anything else in the record to support their position. Hence, even under the "possession plus" test, Velez's conduct with respect to his ID card does not constitute an adoptive admission of the ID card's contents.

C. Business Records Exception: Qualified Witness

The State argues that, regardless of the hearsay issue, under the business records exception, the court properly admitted the ID card. We disagree.

The State argues that under State v. Iverson, 126 Wn. App. 329, 339, 108 P.3d 799 (2005), police officers constitute "qualified witnesses" to testify about Washington State identification cards as business records under RCW 5.45.020. Iverson is inapposite.

A witness is qualified to introduce a business record "where. . . the trial court is satisfied that *sufficient testimony has been adduced regarding the manner in which certain records have been kept* and that their identity has been properly established in compliance with the act. . . ." Cantrill v. Am. Mail Line, Ltd., 42 Wn.2d 590, 607-608, 257 P.2d 179 (1953) (emphasis added). In Iverson, we applied this rule and considered police officers "qualified witnesses" for the purposes of introducing jail booking records because police officers enter data and pictures into the jail booking system in the regular course of their business, they routinely rely on data entered by their fellow officers, and they create or supervise creation of such records on a routine basis. Iverson, 126 Wn. App. at 338 (citing Cantrill, 42 Wn.2d at 608), 339, 341. Likewise, we applied this rule in State v. Bellerouche and concluded that police reports could be admitted as business records if filed, kept, and accessed in accordance with routine recordkeeping procedures of a police department. 129 Wn. App. 912, 917, 120 P.3d 971 (2005) (citing Cantrill, 42 Wn.2d at 607-608). In both cases, police officers kept the records in question.

Here, Detective Seth testified that he routinely relies on a Department of Licensing portal to check identification cards provided to him. In contrast with Iverson, the State did not establish that Detective Seth or any of his fellow police

7

officers had a role in the creation or supervision of Department of Licensing identification records. In contrast with Bellerouche, the State did not establish that the police department filed and kept Department of Licensing identification records. Detective Seth testified to his familiarity with Department of Licensing records, but not to the manner in which they are kept. Accordingly, his testimony did not establish the ID card as a business record.

In light of the foregoing, we conclude the trial court abused its discretion in admitting the uncertified copy of the ID card.

Reversed.

_Chun, J._

WE CONCUR: